## Case No. 9,686.

### MOAN v. WILMARTH et al.

[3 Woodb. & M. 399.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1847.

ARREST—IMPRISONMENT FOR DEBT—BENEFIT OF INSOLVENT LAW—PRACTICE IN FEDERAL COURT.

1. If a debtor, after being sued in this court, takes the benefit of the insolvent laws of Massachusetts, he is entitled under the acts of congress, as to imprisonment for debt, to have execution issue against his property alone.

2. The body of private debtors, when they are sued in the courts of the United States, is imprisoned or not, on execution, according to the laws and policy of each state where the execution issues, while that of debtors to the United States is governed by the uniform and fixed laws of congress.

This was assumpsit on a promissory note, running from the defendants [George L. Wilmarth and others], citizens of this state, to the plaintiff [Augustus R. Moan], a citizen of New York. The action was brought February 19, 1846, and the defendants proposed to be defaulted, having since gone into insolvency under the laws of Massachusetts, and were defaulted and then moved the court that in issuing execution, it should go, not against their bodies, but only their estate.

Mr. Eldridge, for plaintiff.
Mr. Morton, for defendants.

WOODBURY, Circuit Justice. The motion in this case is founded on the acts of congress of February 28, 1839, and January 14, 1841 (5 Stat. 321, 410). The first act abolishes imprisonment under process from the courts of the United States in any state where "imprisonment for debt has been abolished," and if in any state imprisonment is allowed under certain restrictions, the same shall be adopted in the courts of the United States. The last act is "supplemental" to the former, and merely declares that the former "shall be so construed as to abolish imprisonment for debt on process issuing out of any court of the United States, in all cases whatever, where by the laws of the state in which the said court shall be held, imprisonment for debt has been and shall hereafter be abolished." There is no difference between these two statutes in respect to the point now raised, except that the first one applied only to imprisonment in states where it had then, viz., in 1839, been abolished, whereas, the second act applies to all states where it had since been abolished up to 1841, or might

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

afterwards be abolished. The plaintiff contends that neither of them was meant to refer to any state where abolition of imprisonment for debt had not been introduced generally or in all cases, whereas in Massachusetts it has been applied only to cases of insolvents who have surrendered all their property under her insolvent system. There, in such cases only, and none others, are they to be discharged "from arrest and imprisonment in any suit or proceeding" for their previous debts. St. 1838, c. 163. But a part of the first act of congress seems studiously provided to reach such a case, as it provides that "where by the laws of the states imprisonment for debt shall be allowed, under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of the courts of the United States." 5 Stat. 321. Now this provision remaining, as it does, unaffected by the last act of congress, the design of this last being only to include states passing laws to abolish imprisonment for debt after 1839, it follows that an abolition of imprisonment, as in Massachusetts, where property has been surrendered, is one of those abolitions under certain "conditions and restrictions," which we are required to conform to, as much as when the abolition is total. The reason for conforming to it also applies quite as strongly in one case as in the other, because the design of congress is to follow the action of the states on this subject, whether partial or general, and in no case to continue to imprison debtors in suits between individuals in any state, unless those states continue to do it, forbearing where they forbear, and to their extent. Congress adopted, as it well might, other and fixed rules as to imprisonment for its own debtors. See cases and acts. But for private debtors, wisely left them to the policy of their own respective states. This is also in analogy to the original adoption of state forms in writs, executions, &c. These are to remain as they were in 1792 in each state, however diverse, unless changed by the supreme court or congress by subsequent provisions. And these in the circuit courts of the United States differed then as the processes differed in different states in the same manner as the abolition of imprisonment. 1 Stat. 275; [Wayman v. Southard] 10 Wheat. [23 U. S.] 1; Craig's Case [Case No. 3,325]; [Ross v. Duval] 13 Pet. [38 U. S.] 45; [Amis v. Smith] 16 Pet. [41 U. S.] 303. This course accords, too, with the rule of decision under the judiciary act [1 Stat. 73] between private suitors in the courts of the United States, changing in each state, where state legislation changes, and being different in each, if the laws in each differ. See U. S. v. Ames [Case No. 14,441]; Clark v. Sohier [Id. 2,835], and cases there cited.

The great object in all these instances, is to mould the administration of the laws and the effects of it in the courts of the United States, to those in the state courts respectively, except when the constitution or laws of the United States for wise reasons make different provisions in a few special cases. Congress thus allows individuals[1] to have their rights settled on like principles in both courts, but by a tribunal supposed in theory to be more impartial when the action is between a citizen and a nonresident or foreigner, and is brought in the courts of the United States. Bradly v. Currier [Case No. 1,777], Mass. Dist., 1848. By conforming to the laws in each state on all these topics, collision and jealousy are avoided. The conclusion on this question is strengthened by the circumstance that all constructions ought to lean in favor of personal liberty in cases of mere civil indebtedness, where no violence, fraud or crime have been practiced. 1 Tidd, Prac. 546. Finally, the state court of Massachusetts has recently in Bristol county decided that the case of these defendants is one entitled to the privilege of having their bodies exempt from arrest on execution under the state laws, and have thus removed any ground for the idea that in yielding such an exemption here, we do not conform to the state law and its judicial interpretation in its own tribunals, so far as regards the rights of these defendants under them. Let the motion be complied with.